BRIDGES, J.,
for the court.
¶ 1. The Grand Jury of Carroll County indicted Alvin Edwards on one count of statutory rape for the rape of GJH. The jury found Edwards guilty, and Edwards moved for a JNOV. The court denied Edwards’s motion and sentenced Edwards to eight years in the custody of MDOC with four years suspended for a period of five years and four years to serve; upon completion of the sentence, Edwards was to be placed on probation for four years. Edwards perfected his appeal to this Court in a timely fashion.
STATEMENT OF ISSUES
I. DID THE COURT ERR IN RULING THAT EDWARDS HAD NOT MADE A PRIMA FACIE CASE OF RACIAL DISCRIMINATION SUFFICIENT TO SUSTAIN A BATSON CHALLENGE?
II. DID THE COURT ERR IN FINDING THAT THE STATE’S GENDER NEUTRAL REASONS WERE SUFFICIENT TO ACCEPT PEREMPTORY CHALLENGES OF CERTAIN JURORS?
III. DID THE COURT ERR IN GRANTING AN INSTRUCTION THAT CONSENT IS NOT A DEFENSE TO STATUTORY RAPE?
IV. DID THE COURT ERR IN ACCEPTING DR. CLEVELAND AS AN EXPERT?
V. DID THE COURT ERR IN PREVENTING EDWARDS FROM ADVANCING A THEORY THAT THE VICTIM’S MOTHER HAD A VENDETTA AGAINST EDWARDS?
FACTS
¶ 2. Alvin Edwards, while staying overnight at the Thomas home, entered the victim’s bedroom and had sexual intercourse with her. Edwards was in his thirties, and the victim fourteen. The next morning, Edwards left the Thomas residence early. Three days later, the victim told her mother, Denise Thomas, that Edwards had raped her, and Thomas drove *1226 her daughter to the emergency room, where she was examined by Dr. Robert Cleveland, who determined through a physical examination that a rape had indeed taken place.
ANALYSIS
I. DID THE COURT ERR IN RULING THAT EDWARDS HAD NOT MADE A PRIMA FACIE CASE OF RACIAL DISCRIMINATION SUFFICIENT TO SUSTAIN A BATSON CHALLENGE?
¶ 3. A great deal of deference is accorded trial courts in handling a Batson challenge. Spann v. State, 771 So.2d 883, 904 (¶ 61) (Miss.2000). This Court will not reverse factual findings relating to a Bat-son challenge unless they are clearly erroneous. Johnson v. State, 529 So.2d 577, 583 (Miss.1988). Edwards has a high burden to overcome if he wishes to show that the court improperly ruled that he did not make a prima facie case of racial discrimination in jury selection.
¶4. Edwards has to establish a prima facie case of discrimination for Batson purposes; thus, Edwards must demonstrate that the totality of the facts surrounding the State’s peremptory challenges give rise to an inference of a discriminatory purpose. Puckett v. State, 788 So.2d 752, 756 (¶ 10) (Miss.2001). Edwards established with little difficulty that he is black and the State exercised peremptory challenges to keep certain blacks off of the jury. But in the trial court’s judgment, Edwards was unable to prove a discriminatory purpose in the State’s peremptory challenges, and we agree.
¶ 5. When the State began to exercise its peremptory challenges, it faced a jury pool that was predominantly black (fourteen out of eighteen). Following the State’s peremptory challenges, the tendered panel contained ten black jurors and three white jurors. One of the black jurors was an alternate. The proportion of black jurors to white jurors remained consistent, which indicates no overt discrimination by the State. Further, several of the jurors were among those that the court had not chosen to excuse for cause. Finally, the State had remaining challenges available to it. Taken together, and absent any new evidence suggesting purposeful discrimination, we affirm.
II. DID THE COURT ERR IN FINDING THAT THE STATE’S GENDER NEUTRAL REASONS WERE SUFFICIENT TO ACCEPT PEREMPTORY CHALLENGES OF CERTAIN JURORS?
¶ 6. In Mississippi, the trial court’s ruling on Batson related challenges will not be overturned unless they are clearly erroneous. Hatten v. State, 628 So.2d 294, 299 (Miss.1993). The judge should make a “clear and reasonably specific” explanation for his decision. Id. Bat-son challenges to peremptory strikes of jurors may also be brought on grounds of gender discrimination. J.E.B. v. Alabama, 511 U.S. 127, 141, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Although it appears that in this case the judge accepted the State’s proffered gender-neutral reasons without reservation, this is not in itself sufficient to demonstrate clear error on the court’s part. In any case, this Court must review the findings of the trial court in the light most favorable to those findings. Berry v. State, 703 So.2d 269, 295 (Miss.1997).
¶ 7. The first peremptory strike by the State was against a man whom the State had attempted to have discharged for cause, on the grounds that he had contact with the defendant the day prior to *1227 the trial, and then concealed it initially during voir dire, which caused the prosecutor to distrust the potential juror. The judge properly accepted this as a gender-neutral reason. The next peremptory strike by the State was not subject to the Batson challenge, since that juror was female, and Edwards had not objected to the State excluding women. The State’s third strike was brought against a man whose daughter-in-law was at that time under indictment. See Magee v. State, 720 So.2d 186, 190 (¶ 13) (Miss.1998). Edwards objected that this information had not been brought out during voir dire, and the court accepted the State’s gender-neutral reason.
¶ 8. The State’s fourth strike was brought against a man whom the State believed would place a lower value on one’s right to be free from sexual assault, as he worked next door to a strip club. The court accepted this reasoning as gender-neutral, over Edwards’s objection that this fact was not brought out in voir dire. See Baldwin v. State, 784 So.2d 148, 155 (¶¶ 22-23) (Miss.2001).
¶ 9. The State’s fifth strike was against a man who was twenty-four years old and worked in a factory, based on his age and employment. Id. Edwards objected that this was pretextual, and in fact that the State wanted the man off the jury because he was black and male, rather than because he was close in age to Edwards and had a blue-collar job. The court considered Edwards’s objection, and accepted the State’s reasoning as gender-neutral.
¶ 10. The record does not demonstrate any error by the court. Edwards’s objections, while cogent, are insignificant, because peremptory strikes do not have to be based solely on knowledge gleaned from the venire process, but may be based on known facts, and Edwards admitted that he was aware of the factual basis the State relied upon for their gender-neutral reasons. Further, Edwards offers no argument that these are not gender-neutral reasons. He instead focuses solely on the issue of race, for which he failed to establish a prima facie case at trial, and again failed to do in his appeal. We find that the court committed no error here.
III. DID THE COURT ERR IN GRANTING AN INSTRUCTION THAT CONSENT IS NOT A DEFENSE TO STATUTORY RAPE?
¶ 11. Instructions to a jury are not to be considered within a vacuum, but reviewed as a whole. Malone v. State, 486 So.2d 360, 365 (Miss.1986). The State’s instruction, S-6, defined an element of the crime, and came directly from the statute. Even though Edwards did not attempt to raise consent as a defense to the crime, in Mississippi there is no error if the requested instruction is part of the definition of the crime. Eakes v. State, 665 So.2d 852, 871 (Miss.1995). As the State’s given instruction merely served to define the crime, the court properly instructed the jury, even though consent was never raised by Edwards as a defense. Finding no error, we affirm.
IV. DID THE COURT ERR IN ACCEPTING DR. CLEVELAND AS AN EXPERT?
¶ 12. The court initially accepted Dr. Cleveland as an expert in emergency medicine, and as an expert in family practice, which included obstetrics and gynecology. An expert’s qualifications are ultimately within the discretion of the trial court. Foster v. State, 639 So.2d 1263, 1287 (Miss.1994). Thus, Edwards must demonstrate that the court abused its discretion in ruling that Dr. Cleveland was qualified to present an expert opinion con *1228 cerning gynecology and obstetrics within the field of family medicine.
¶ 13. The court found Dr. Cleveland’s expertise as a family practitioner, coupled with his experience as an emergency room doctor who treated several rape victims, compelling enough to allow Dr. Cleveland to render an expert opinion on the gynecological matters in this case. Edwards did not contest Dr. Cleveland’s familiarity with rape cases at trial, and does not in his brief. The nub of Edwards’s assignment of error is that Dr. Cleveland had not been a doctor long enough to be an expert.
¶ 14. Edwards did not conduct a voir dire of Dr. Cleveland to test his expertise. Edwards merely fielded an objection that he felt that Dr. Cleveland was not properly qualified to render such an opinion. Edwards did not provide a specific ground of objection for the court to rule on, rendering his objection essentially meaningless before this Court. Edwards asserts that the State had the responsibility of testing Dr. Cleveland’s qualifications; however, the burden was his to bring specific objections at trial. Hosford v. State, 560 So.2d 163, 168 (Miss.1990).
Y. DID THE COURT ERR IN PREVENTING EDWARDS FROM ADVANCING A THEORY THAT THE VICTIM’S MOTHER HAD A VENDETTA AGAINST EDWARDS?
¶ 15. The court ruled that to permit Edwards to advance a theory that Denise Thomas, the victim’s mother, had it in for him and had provoked the prosecution, would be more prejudicial than probative, and barred any such testimony. When reviewing a judge’s ruling on the admissibility of evidence, this Court treats the trial court’s decisions with great deference, reversing only if there has been clear error or abuse of discretion. Under Mississippi’s rules of evidence, the court must decide that each piece of evidence is more probative than prejudicial before it may be brought before the jury. M.R.E. 403.
¶ 16. Edwards made a proffer following the State’s objection, which consisted solely of the testimony of Thomas, where she categorically denied the substance of Edwards’s theory: she stated that she did not ever have sexual relations with Edwards; that she had never wanted to have sexual relations with Edwards; that she had never made advances towards Edwards; that Edwards had never rebuffed any advances; and that she had no animus towards him for rebuffing her advances.
¶ 17. Edwards never made a proffer that anyone else had knowledge of Thomas’s vendetta against Edwards, although he intimated that he could produce witnesses who did. Edwards never made a proffer of their testimony; his attorney merely suggested they would be able to testify to this vendetta. Offers of proof are made to provide the court with the substance of the evidence. M.R.E. 103(a)(2). Since Edwards did not make an offer of proof to provide substance to this theory of his defense, this Court cannot properly evaluate his claims. Thus, we must affirm.
CONCLUSION
¶ 18. Edwards makes five assignments of error in his appeal. First, he alleges that the court erred in ruling that he had not made a prima facie case of racial discrimination sufficient to sustain a Batson challenge. The evidence did not demonstrate any purposeful discrimination on the basis of race, as the proportion of black jurors to white jurors remained consistent with that of the jury pool. Further, the State did not use all of its peremptory challenges, and struck jurors that the court had not excused for cause upon the State’s request.
*1229 ¶ 19. Second, Edwards argues that the court erred by finding that the State had provided sufficiently gender-neutral reasons for its peremptory challenges to clear the Batson hurdle. Although the court accepted the State’s reasons without reservation, that does not constitute clear error. Edwards’s objections to the peremptory challenge stated that the State based its peremptory challenges on information not brought out on voir dire. Edwards does not provide any authority for this argument, and in fact peremptory challenges can be made for no reasons, or following a Batson challenge, any reason that is not racially or gender motivated.
¶ 20. Third, Edwards argues that the court erred by granting an instruction stating that consent was not a defense to statutory rape, on the grounds that consent was never argued before the court. However, consent not operating as a defense to statutory rape is part of the definition of the crime, and in Mississippi, instructions which include the definition of the crime are not erroneous. Fourth, Edwards argues that the court erred in admitting Dr. Cleveland as an expert in the field of gynecology and family medicine. Edwards argues that Dr. Cleveland is not a gynecologist, and that he had not been a doctor long enough to be an expert. However, Edwards did not conduct a voir dire examination of Cleveland^ and brought no specific objections at trial beyond his tenure as a doctor.
¶21. Fifth, Edwards argues that he was inappropriately barred from presenting a theory of vendetta as his defense. Edwards attempted to argue that Denise Thomas had it in for Edwards because he had rejected her advances; but at trial he made no proffer of evidence beyond asking Thomas if this was in fact the case. He alluded to other witnesses, but did not produce them.
¶ 22. For the foregoing reasons, we affirm the judgment of the trial court.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF CARROLL COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS TO SERVE AND FOUR YEARS SUSPENDED AND FOUR YEARS OF SUPERVISED PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CARROLL COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. KING, P.J. AND IRVING, J„ CONCUR IN RESULT ONLY.